**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DOORAGE, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | No. 21 C 5173 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| CRUM & FORSTER SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Doorage, Inc. ("Doorage") brings this action against Defendant Crum & Forster Specialty Insurance Company. (*See generally* Dkt. 1-1). The Complaint alleges various claims in connection with Defendant's duty to defend and indemnify a third party to this action, Blue Crates LLC ("Blue Crates"), under two policies of insurance. (*E.g.*, *id.* ¶¶ 5, 50, 57, 60). Specifically, Doorage brings claims for declaratory judgment (Count I), (*id.* ¶¶ 59–78) and violation of the Illinois insurance Code, 215 ILCS 5/155 (Count II), (*id.* ¶¶ 79–88). Defendant now moves to dismiss Doorage's Complaint for failure to state a claim or, in the alternative, to stay the action pending proceedings in an underlying case. (Dkt. 7 at 9–13). For the reasons set forth below, the Defendant's motion [7] is granted in part and denied in part. In addition, the motion to stay is granted.

## BACKGROUND

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations are taken from Doorage's

1

Complaint, (Dkt. 1-1) and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

On or around February 19, 2018, Doorage published three videos on YouTube to market and advertise its business (the "Marketing Videos"). (Dkt. 1-1 ¶ 13). At all relevant times, Doorage was the sole owner of all copyright rights to the Marketing Videos. (*Id.* ¶¶ 13–14 (further noting that Doorage had not issued any licenses or sublicenses or otherwise assigned its rights to the Marketing Videos to any other party)). However, in or around July 2019, Doorage discovered that Blue Crates had infringed on its copyrights in the Marketing Videos by publishing substantially similar videos to the internet. (*Id.* ¶ 15). Through counsel, Doorage sent a cease-and-desist letter to Blue Crates notifying it of its copyright infringement. (*Id.* ¶ 16). Blue Crates acknowledged receipt of the letter but refused to remove its advertisements from the internet. (*Id.* ¶¶ 17, 39).

On January 19, 2020, Doorage filed a complaint alleging Copyright Infringement, Unfair Trade Practices and Unfair Competition against Blue Crates in the U.S. District Court for the Northern District of Illinois (the "Underlying Action"). (*Id.* ¶ 18). In the Underlying Action, Doorage alleged that Blue Crates "use[d] [Doorage's] idea in [its] advertisement" and "infring[ed] upon [Doorage's] copyright . . . in [its] advertisement." (*Id.* ¶ 24). Doorage requested a preliminary injunction enjoining Blue Crates from using its infringing advertisements as well as monetary damages. (*Id.*).

On or about February 3, 2020, Blue Crates notified its insurance company – the Defendant in this action – about the Underlying Action. (*Id.* ¶ 19). Defendant issued Blue Crates two insurance policies effective from May 11, 2018 through May 11, 2019 (the "2018 Policy") and May 11, 2019 through May 11, 2020 (the "2019 Policy") (together, the "Policies"). (*Id.* ¶¶ 21–

2

22).  Coverage B of both Policies provide coverage for "Personal and Advertising Injury" liability, which pertain to injury caused by "the use of another's advertising idea in your advertisement" or "infringing upon another's copyright, trade dress or slogan in your advertisement."  (*Id.* ¶ 23 (quotation marks omitted); *see also id.* at 47 (Exhibit 2, setting forth Coverage B under 2018 Policy), 96 (Exhibit 3, setting forth Coverage B under 2018 Policy))).  The Policies' Coverage B excluded claims for "Knowing Violation[s] Of Rights Of Another."  (*E.g.*, *id.* at 96).  This exclusion precludes coverage for "[p]ersonal and advertising injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict person and advertising injury."  (*Id.* (quotation marks omitted)).  Defendant agreed to defend Blue Crates in the Underlying Action, subject to a reservation of rights, in a letter dated February 18, 2020.  (*Id.* ¶¶ 20, 25).  More specifically, Defendant agreed to cover Blue Crates under the 2019 Policy – because the Underlying Action alleged infringement "at least in July 2019" – but denied coverage under the 2018 Policy without explanation.  (*Id.* ¶¶ 25–26).  Discovery in the Underlying Action revealed that Blue Crates' infringement began as early as September 2018.  (*Id.* ¶ 27).  Blue Crates also admitted in the Underlying Action that it published one of its infringing videos online on December 1, 2018.  (*Id.*).

On October 14, 2020, Defendant filed a Complaint for Declaratory Judgment against Blue Crates in the U.S. District Court for the Northern District of Illinois (the "Declaratory Action"). (*Id.* ¶ 28; *see also id.* ¶ 30 (noting that Defendant did not assert any claims against Doorage in the Declaratory Action, but Doorage was named as a defendant therein as a necessary and indispensable party)).  Defendant sought a declaration that Blue Crates was not covered under the Policies, including because "Blue Crates knowingly violated the rights of Doorage through publishing its infringing videos" in keeping with the exclusions under Coverage B.  (*Id.* ¶ 29).

Blue Crates filed a counterclaim in the Declaratory Action seeking a declaratory judgment that Defendant had a duty to defend it in the Underlying Action. (*Id.* ¶ 31).

On or about March 2, 2021, Defendant and Blue Crates entered into a "Confidential Settlement Agreement and Release." (*Id.* ¶ 34). The agreement released Defendant from any obligation to defend or indemnify Blue Crates for Doorage's claims in the Underlying Action for $75,000 in consideration. (*Id.* ¶¶ 34, 47). On March 8, 2021, Defendant and Blue Crates filed a joint status report stating that they entered into a settlement to resolve all claims at issue in the Declaratory Action. (*Id.* ¶ 32). On March 12, 2021, both parties voluntarily dismissed their claims with prejudice. (*Id.* ¶ 33). Blue Crates later filed for Chapter 11 bankruptcy on March 26, 2021. (*Id.* ¶ 36). In its Chapter 11 filings, Blue Crates identified unsecured claims totaling $1,114,827.20 – including Doorage's $1,000,000 claim for alleged copyright infringement. (*Id.* ¶ 36). The Underlying Action was stayed by operation of law on April 12, 2021 due to Blue Crates' bankruptcy action. (*Id.* ¶ 37).

Following entry of the settlement agreement, Doorage made a direct claim to Defendant for its injuries flowing from Blue Crates' infringement. (*Id.* ¶ 56). Defendant responded by letter on April 2, 2021, stating that pursuant to the settlement agreement, Defendant "no longer owes any obligations to Blue Crates under any of the policies that were previously issued to it. Therefore, Crum & Forster will not take any action on behalf of Blue Crates in this new, or any future, matters." (*Id.*). Doorage now maintains that Defendant intentionally entered into a settlement with Blue Crates to "avoid their legal obligations to make Doorage whole due to Blue Crates' wrongful conduct." (*Id.* ¶ 57; *see also id.* ¶¶ 38 (asserting that Defendant has taken "significant and unreasonable action to avoid responsibility" for Blue Crates' conduct), 50–51

4

(stating essentially same), 58 (claiming that Illinois law forbids insureds and insurance companies from conspiring to defeat the rights of an injured party)).

## LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all factual allegations in the amended complaint and draw all permissible inferences in [the plaintiff]'s favor." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). To state a claim upon which relief may be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations are not required, but the plaintiff must allege facts that when "accepted as true . . . 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678. In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id.* at 679. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## DISCUSSION

### I. Doorage Sufficiently Pleads a Declaratory Judgment Action

Under Illinois law, a "declaratory judgment action requires: (1) a plaintiff with a tangible, legal interest; (2) a defendant with an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Adkins Energy, LLC v. Delta–T Corp.*, 806 N.E.2d 1273, 1275 (2004) (internal citations omitted). A tort-claimant may bring a declaratory judgment action against a tortfeasor's insurance company when such company refuses to defend or indemnify the

tortfeasor. *See Record-A-Hit, Inc., v. Nat'l Fire Ins. Co.*, 377 Ill. App. 3d 642, 644–48 (2007) ("A tort-claimant . . . has a substantial right in the viability of a policy of insurance that might be the source of funds available to satisfy the tort claim . . . which vest[s] at the time of the occurrence giving rise to the underlying claim."); *Pratt v. Protective Ins. Co.*, 250 Ill. App. 3d 612, 618 (1993) ("An injured party may **always** bring a declaratory judgment action to determine a tortfeasor's coverage under an insurance policy.") (emphasis added); *Reagor v. Travelers Ins. Co.*, 415 N.E.2d 512, 514–15 (1980) (ruling that plaintiffs had standing to bring declaratory judgment action because "injured members of the general public are beneficiaries of liability insurance policies" and that they have "rights under the policy which vest at the time of the occurrence giving rise to [their] injuries").

Here, Doorage seeks a judicial determination regarding Defendant's alleged obligation to defend and indemnify Blue Crates for Doorage's claims. (Dkt. 1-1 ¶¶ 59–78). In support of its claim, Doorage has alleged (1) its status as a tort-claimant in the Underlying Action, (*e.g.*, *id.* ¶¶ 15–17, 24, 27, 77); (2) Defendant issued policies of liability insurance to Blue Crates, under which Defendant was obligated to defend and indemnify Blue Crates for personal and advertising injuries, (*e.g.*, *id.* ¶¶ 5, 21–23, 70–75); and (3) Defendant conspired with Blue Crates to defeat Doorage's right to recovery, (*e.g.*, *id.* ¶¶ 4 ("[Defendant] attempted to obtain a release of any obligation to satisfy a settlement or judgment obtained by Doorage for a paltry sum of $75,000. Blue Crates entered into the settlement agreement purportedly leaving it without further insurance coverage for Doorage's claim."), 57 ("[Defendant] and Blue Crates intentionally entered into the Settlement Agreement, even though [Defendant] was obligated to defend and indemnify Blue Crates for the Underlying Action under the 2018 Policy and 2019 Policy, to avoid their legal obligations to make Doorage whole due to Blue Crates' wrongful conduct.")). Taking these claims

as true – as the Court must on a motion to dismiss – Doorage sufficiently pleads that it has a legal interest in the viability of the relevant insurance policies, and that an actual controversy exists concerning the same. *See Record-A-Hit*, 377 Ill. App. 3d at 645.

Citing *Dial Corp. v. Marine Off. of Am.*, 318 Ill. App. 3d 1056 (2001), Defendant argues that Doorage failed to allege an essential element of a declaratory judgment action brought by a tort-claimant – namely, that "neither the insured nor the insurer has filed a declaratory judgment action to determine the scope of the insurer's policy." (Dkt. 7 at 9 (citing *Dial*, 318 Ill. App. 3d at 1063)). *Contra Pratt*, 250 Ill. App. 3d at 618 (explaining that injured parties may "always" bring declaratory judgment actions to determine the scope of coverage afforded to a tortfeasor under an insurance policy) (citing *Reagor*, 415 N.E.2d 512). Defendant maintains that because it previously sought a judicial declaration that the Policies do not cover Blue Crates for Doorage's claims in the Underlying Action, *Dial* precludes Doorage from bringing the declaratory judgment action now before the Court. (Dkt. 7 at 10). *Dial* is unavailing, however, because it was expressly overruled by the Illinois Appellate Court in *Record-A-Hit*. *Record-A-Hit* explains that *Dial* erroneously restricted standing in declaratory judgment actions based on a misreading of Illinois Supreme Court precedent. *Record-A-Hit*, 377 Ill. App. 3d at 647 ("We . . . do not believe that this isolated passage from the [Illinois Supreme Court's] decision . . . when viewed in context, supports the *Dial* Court's limitation on [standing]."). *Record-A-Hit* ultimately holds that "a tort-claimant <u>need not allege</u> that neither the insured-tortfeasor nor the insurance carrier has filed a declaratory judgment action" to have standing, overruling *Dial*. *Id.* at 648 (emphasis added).

Defendant's attempt to support its argument with *Clifton*, an unpublished order under Illinois Supreme Court Rule 23, is also unavailing. *See Clifton v. Arcadia Real Est. Developing & Inv. Co.*, No. 1-11-0681, 2012 IL App (1st) 110681-U ¶¶ 13–15 (Ill. App. Ct. Feb. 21, 2012)

(applying *Dial* and finding that the plaintiff lacked standing to bring a declaratory judgment action). To begin, decisions published under Illinois Supreme Court Rule 23 are *not* precedential, "except to support contentions of double jeopardy, *res judicata*, collateral estoppel, or law of the case" – none of which applies here. ILCS S. CT. R. 23(e); *see also, e.g.*, *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1093 (7th Cir. 2016) (stating an unpublished decision is "afforded less weight than a published decision" per Rule 23); *Rosario v. Retirement Bd. of Policemen's Annuity & Ben. Fund for City of Chi.*, 743 F.3d 531, 534 (7th Cir. 2014) (explaining that unpublished decisions are not "binding Illinois precedent"); *Hovde v. ISLA Dev. LLC*, No. 18-cv-7323, 2021 WL 4477912, at *5 n.11 (N.D. Ill. Sept. 30, 2021) (recognizing that under Rule 23, unpublished opinions "cannot be cited as precedent" but may be referenced as "persuasive authority"). Critically, *Clifton*'s persuasive weight is diminished because the Court failed to address the Appellate Court's 2007 *Record-A-Hit* decision – which, again, directly overruled *Dial*. *Record-A-Hit*, 377 Ill. App. 3d at 648 ("[I]n cases where an actual controversy exists between a tort-claimant and the tortfeasor's insurance carrier, the holding in *Pratt* represents an accurate statement of the law without the limitation imposed by the *Dial* court."). Because *Clifton* is an unpublished opinion that conflicts with binding precedent, it is entitled to no deference.

Count I adequately pleads a declaratory judgment action to determine the scope of coverage afforded to Blue Crates under the insurance policies issued by Defendant. Therefore, Defendant's Motion to Dismiss [7] is denied as to Count I.

## II. Plaintiff Lacks Standing Under Section 155

Count II of the Complaint alleges that Defendant violated Section 155 of the Illinois Insurance Code when it attempted to avoid its obligation to defend and indemnify Blue Crates. (Dkt. 1-1 at 2 ¶ 7; 16–17 ¶¶ 85–88). Defendant counters that penalties under 215 ILCS 5/155 are

available only to an insured or its assignees, and therefore Doorage – as a third party to the relevant Policies – cannot sustain a claim.  (Dkt. 7 at 11).

Section 155 of the Illinois Insurance Code establishes the court's authority to award attorneys' fees, costs, and other amounts for an insurer's unreasonable or vexatious conduct in settling a claim.  215 ILCS 5/155.  "The provision 'is intended to penalize vexatious delay or rejection of legitimate claims by insurance companies.' "  *Arthur Anderson LLP v. Fed. Ins. Co.*, No. 06-cv-1824, 2007 WL 844632, at *18 (N.D. Ill. Mar. 16, 2007).  "Because this statute is 'penal in nature' its provisions must be strictly construed."  *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000).  The Supreme Court of Illinois has held that "[a]s a general rule, the remedy embodied in section 155 of the Insurance Code extends <u>only</u> to the party insured . . . and policy assignees" and that "the remedy embodied in section 155 of the Insurance Code <u>does not extend to third parties</u>."  *Yassin v. Certified Grocers of Ill., Inc.*, 133 Ill.2d 458, 466 (1990) (emphasis added); *Statewide Ins. Co. v. Houston*, 397 Ill. App. 3d 410, 416 (2009) (reaffirming same); *see also Roppo v. Travelers Cos.*, 869 F.3d 568, 596–97 (7th Cir. 2017) (dismissing tort claimant's Section 155 count against tortfeasor's insurer, ruling the claimant could not bring the claim because she was not the insured or the insured's assignee); *Krug v. Am. Family Mut. Ins. Co.*, 227 F. Supp. 3d 942, 944–45 (N.D. Ill. 2016) (same).  An exception to this bar on third party recovery is for assignees of the insured who succeed to the insured's position.  *Statewide Ins. Co.*, 397 Ill. App. 3d 410 at 416; *Yassin*, 133 Ill.2d at 466.  However, this exception does not extend to " 'true' third parties" who do not have a contractual relationship with the insurer.  *Garcia v. Lovellette*, 265 Ill. App. 3d 724, 728 (1994).

Doorage does not allege that it is an insured or assignee under the Policies at issue.  Instead, relying on *Garcia*, Doorage contends that it is an "intended third-party beneficiar[y]" of the

Policies. (Dkt. 10 at 11 (arguing that *Garcia* provides a "recognized exception" to the *Yassin* rule, allowing "intended third-party beneficiaries of [an] insurance policy" to bring claims under Section 155)). Doorage's reliance on *Garcia* is misplaced. *Garcia* involved the medical payments provision of an automobile policy. There, an Illinois appellate court held that an injured occupant of a vehicle covered under an insurance policy had standing to pursue a Section 155 claim because the policy "expressly define[d] an occupant of the named insured's car as an insured." *Id.* at 728, 732 (further explaining that for the same reasons, Doorage was an "intended beneficiary of [the] insurance contract"). As such, Garcia was not a " 'true' third-party tort claimant whose rights arise only incidentally from the negligence of another, but . . . a party who has standing to sue as a direct beneficiary of the contract for whom the payments were intended." *Id.* at 731. As such, *Garcia* is entirely consistent *Yassin* – and does not create a "recognized exception" to *Yassin*, as Doorage argues – because the Section 155 claim was brought by an insured individual. Although Doorage makes conclusory statements claiming to be a beneficiary of and real party in interest to the Policies, (Dkt. 10 at 12), there is no basis to find that Doorage is an "insured" or intended beneficiary of the Policies as in *Garcia*. *See, e.g.*, *Roppo*, 869 F.3d at 596 (affirming dismissal of Section 155 claim brought by tort claimant as foreclosed by *Yassin*); *Krug*, 227 F. Supp. 3d at 944–45 (distinguishing *Garcia* and dismissing Section 155 claim brought by tort claimant).

Only an insured or its assignee can assert a Section 155 claim. As a third-party claimant, Doorage has no cognizable claim against Defendant for violations of Section 155 of the Illinois Insurance Code. Accordingly, Defendant's motion [7] is granted as to Count II.

## III. Defendant's Motion for a Stay Is Granted

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of cases on its docket with economy of time and effort for itself, for counsel

and for litigants." *Texas Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005) (citation omitted); *see also Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1133 (7th Cir. 2012) ("[A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment.") (quoting *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 985–86 (7th Cir. 2010)). In determining whether to issue a stay, courts generally consider three factors: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the court." *See, e.g.*, *Tel. Sci. Corp. v. Asset Recovery Solutions, LLC*, No. 15-cv-5182, 2016 WL 47916, at *2 (N.D. Ill. Jan. 5, 2016). The second and third factors are similar and courts, therefore, often analyze them together. *See id.*

Defendant moves to stay the case pending adjudication of the Underlying Action, (Dkt. 7 at 12–13) in which Doorage alleged that Blue Crates infringed on Doorage's copyrights, (Dkt. 1-1 ¶¶ 24, 70, 73). Defendant notes that the insurance policies at issue expressly preclude coverage for "[p]ersonal and advertising injury caused . . . with the knowledge that the act would violate the rights of another." (Dkt. 7 at 5 (internal quotation marks omitted)). Accordingly, per Defendant, determining the extent of Blue Crates' coverage under the policies would require this Court to determine "a critical ultimate fact in the Underlying Action concerning the availability of damages for copyright infringement" – namely, whether Blue Crates knowingly infringed such copyrights. (*Id.* at 12–13; Dkt. 11 at 11). Defendant also contends that a stay is appropriate here because the Underlying Action itself is stayed due to Blue Crates' bankruptcy filing. (Dkt. 7 at 13; Dkt. 11 at 11; *see also* Dkt. 1-1 ¶ 37). Doorage counters that a stay is unnecessary here, where "[n]o 'ultimate facts' need to be determined by this Court;" Doorage maintains that the Court may simply compare

11

the allegations of Doorage's complaint in the Underlying Action to the applicable policies to determine whether Defendant has a duty to defend Blue Crates' claim. (Dkt. 10 at 14). Doorage's argument elides the fact that resolution of its claims in this action will depend on a finding as to whether Blue Crates knowingly infringed on Doorage's copyright – which could implicate pertinent exclusions under the Policies. (*Id.* at 12). Such a finding in the Underlying Action would simplify the issues and reduce the burden of litigation on the parties and the Court. Moreover, Doorage does not argue that a stay would unduly prejudice it or place it at a tactical disadvantage, and the Court finds no reason to conclude otherwise. These circumstances counsel in favor of granting a stay. *See generally, e.g.*, *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 186 F. Supp. 3d 870 (N.D. Ill. 2016); *Fauley v. Drug Depot, Inc.*, No. 15-cv-10735, 2016 WL 11730949 (N.D. Ill. May 9, 2016).

Doorage next argues that Defendant is judicially estopped from requesting a stay of this action, having successfully opposed a stay in its prior Declaratory Action. (Dkt. 10 at 13–14). "The doctrine of judicial estoppel prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter." *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)); *see also Butler v. Village of Round Lake*, 585 F.3d 1020, 1023 (7th Cir. 2009) (explaining that judicial estoppel prevents a party from an "about-face"). However, for judicial estoppel to apply, three requirements must be met: "(1) the latter position must be clearly inconsistent with the earlier position; (2) the facts at issue must be the same in both cases; and (3) the party to be estopped must have prevailed upon the first court to adopt the position." *Mendez v. City of Chi.*, 174 F. App'x 342, 347 (7th Cir. 2006); *see also Urbania v. Cent. States, Se. & Sw. Areas Pension Fund*, 421 F.3d 580, 589 (7th Cir. 2005); *Amerisure Mut. Ins. Co. v. Iron Mountain Info. Mgmt.,*

*LLC*, No. 18-cv-5317, 2020 WL 5085373, at *4 (N.D. Ill. May 7, 2020). Judicial estoppel does not apply to Defendant's request for a stay because the facts at issue in this case are not the same as those in Defendant's Declaratory Action. Specifically, Defendant and Blue Crates have since entered into a settlement agreement that extinguished Defendant's duty to defend Blue Crates under the Policies – which was the focus of Defendant's Declaratory Action. Another material change in facts from the prior suit is that Blue Crates has now filed for bankruptcy, resulting in a stay of the Underlying Action's proceedings; as discussed above, resolution of the Underlying Action bears on issues now before the Court. Accordingly, Defendant is not judicially estopped from now requesting a stay. The stay is granted.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss [7] is granted in part and denied in part.

Virginia M. Kendall
United States District Judge

Date: February 17, 2022

13